# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF TEXAS
### HOUSTON DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | § | |
| | § | |
| v. | § | CRIMINAL NO. 4:18-CR-00072 |
| | § | |
| DERRICK ANDRE CHIZER, | § | |
| Defendant. | | |

## PLEA AGREEMENT

The United States of America, by and through Ryan K. Patrick, United States Attorney for the Southern District of Texas, and Daniel C. Rodriguez, Assistant United States Attorney, and the defendant, Derrick Andre Chizer ("Defendant"), and Defendant's counsel, Assistant Federal Public Defender Philip G. Gallagher, pursuant to Rules 11(c)(1)(A) and 11(c)(1)(B) of the Federal Rules of Criminal Procedure, state that they have entered into an agreement, the terms and conditions of which are as follows:

### Defendant's Agreement

1.     Defendant agrees to plead guilty to Count One of the Criminal Information.   Count One charges Defendant with Conspiracy to Commit Wire Fraud, in violation of Title 18, United States Code, Sections 371 and 1343. Defendant, by entering this plea, agrees that he is waiving any right to have the facts that the law makes essential to the punishment charged either in a Criminal

Information or an Indictment, or proved to a jury or proven beyond a reasonable doubt.

### Punishment Range

2.   The **statutory** maximum penalty for each violation of Title 18, United States Code, Section 371, is imprisonment of not more than 5 years and a fine of not more than $250,000.   Additionally, Defendant may receive a term of supervised release after imprisonment of up to 3 years.   *See* Title 18, United States Code, sections 3559(a)(4) and 3583(b)(2).   Defendant acknowledges and understands that if he should violate the conditions of any period of supervised release which may be imposed as part of his sentence, then Defendant may be imprisoned for the entire term of supervised release, without credit for time already served on the term of supervised release prior to such violation.   *See* Title 18, United Stated Code, sections 3559(a)(4) and 3583(e)(3).   Defendant understands that he cannot have the imposition or execution of the sentence suspended, nor is he eligible for parole.

### Mandatory Special Assessment

3.     Pursuant to Title 18, United States Code, section 3013(a)(2)(A), immediately after sentencing, Defendant will pay to the Clerk of the United States District Court a special assessment in the amount of one hundred dollars ($100.00) per count of conviction.   The payment will be by cashier's check or money order,

2

payable to the Clerk of the United States District Court, c/o District Clerk's Office, P.O. Box 61010, Houston, Texas 77208, Attention: Finance.

**Immigration Consequences**

4.     Defendant recognizes that pleading guilty may have consequences with respect to his immigration status if he is not a citizen of the United States. Defendant understands that if he is not a citizen of the United States, by pleading guilty he may be removed from the United States, denied citizenship, and denied admission to the United States in the future.   Defendant's attorney has advised Defendant of the potential immigration consequences resulting from Defendant's plea of guilty.

**Cooperation**

5.     The parties understand this agreement carries the potential for a motion for departure under Section 5K1.1 of the Sentencing Guidelines.   Defendant understands and agrees that whether such a motion is filed will be determined solely by the United States through the United States Attorney for the Southern District of Texas.   Should Defendant's cooperation, in the sole judgment and discretion of the United States, amount to "substantial assistance," the United States reserves the sole right to file a motion for departure pursuant to Section 5K1.1 of the United States Sentencing Guidelines.   Defendant further agrees to persist in that plea through

3

sentencing, fully cooperate with the United States, not oppose the forfeiture of assets

contemplated in paragraph 22 of this agreement.   Defendant understands and agrees

that the United States will request that sentencing be deferred until that cooperation

is complete.

6.   Defendant understands and agrees that "fully cooperate," as that term is

used herein, includes providing all information relating to any criminal activity

known to Defendant, including but not limited to fraudulent activity associated with

U.S. Department of Veterans Affairs' service-disabled veteran-owned small

business program (SDVOSB).   Defendant understands that such information

includes both state and federal offenses arising therefrom.   In that regard:

(a)   Defendant agrees that this plea agreement binds only the United States Attorney for the Southern District of Texas and Defendant; it does not bind any other United States Attorney or any other unit of the Department of Justice;

(b)   Defendant agrees to testify truthfully as a witness before a grand jury or in any other judicial or administrative proceeding when called upon to do so by the United States.   Defendant further agrees to waive his Fifth Amendment privilege against self-incrimination for the purpose of this agreement;

(c)   Defendant agrees to voluntarily attend any interviews and conferences as the United States may request;

(d)   Defendant agrees to provide truthful, complete and accurate information and testimony and understands any false statements made by the defendant to the Grand Jury or at any court proceeding (criminal or civil), or to a government agent or attorney, can and will be

4

prosecuted under the appropriate perjury, false statement, or obstruction statutes;

(e)     Defendant agrees to provide to the United States all documents in his possession or under his control relating to all areas of inquiry and investigation; and

(f)     Should the recommended departure, if any, not meet Defendant's expectations, the Defendant understands that he remains bound by the terms of this agreement and cannot, for that reason alone, withdraw his plea.

## Waiver of Appeal and Collateral Review

7.   Defendant is aware that Title 28, United States Code, section 1291, and Title 18, United States Code, section 3742, afford a defendant the right to appeal the conviction and sentence imposed. Defendant is also aware that Title 28, United States Code, section 2255, affords the right to contest or "collaterally attack" a conviction or sentence after the judgment of conviction and sentence has become final.   Defendant knowingly and voluntarily waives the right to appeal or "collaterally attack" the conviction and sentence, except that Defendant does not waive the right to raise a claim of ineffective assistance of counsel on direct appeal, if otherwise permitted, or on collateral review in a motion under Title 28, United States Code, section 2255.   In the event Defendant files a notice of appeal following the imposition of the sentence or later collaterally attacks his conviction or sentence,

5

the United States will assert its rights under this agreement and seek specific performance of these waivers.

8. In agreeing to these waivers, Defendant is aware that a sentence has not yet been determined by the Court. Defendant is also aware that any estimate of the possible sentencing range under the sentencing guidelines that he may have received from his counsel, the United States or the Probation Office, is a prediction and not a promise, did not induce his guilty plea, and is not binding on the United States, the Probation Office or the Court. The United States does not make any promise or representation concerning what sentence the defendant will receive. Defendant further understands and agrees that the United States Sentencing Guidelines are "effectively advisory" to the Court. *See United States v. Booker*, 543 U.S. 220 (2005). Accordingly, Defendant understands that, although the Court must consult the Sentencing Guidelines and must take them into account when sentencing Defendant, the Court is not bound to follow the Sentencing Guidelines nor sentence Defendant within the calculated guideline range.

9. Defendant understands and agrees that each and all waivers contained in the Agreement are made in exchange for the concessions made by the United States in this plea agreement.

### The United States' Agreements

10.  The United States agrees to each of the following:

(a)    If Defendant pleads guilty to Count One of the Criminal Information and persists in that plea through sentencing and the Court determines that Defendant qualifies for an adjustment under section 3E1.1(a) of the United States Sentencing Guidelines, and the offense level prior to operation of section 3E1.1(a) is 16 or greater, the United States will move under section 3E1.1(b) for an additional one-level reduction because Defendant timely notified authorities of his or her intent to plead guilty, thereby permitting the United States to avoid preparing for trial and permitting the United States and the Court to allocate their resources more efficiently; and

(b)    The United States agrees, if the Defendant has no prior criminal convictions, to recommend to the Court that the Defendant be sentenced to the low end of the Court determined sentencing guideline range.

### Agreement Binding - Southern District of Texas Only

11.  The United States Attorney's Office for the Southern District of Texas agrees that it will not further criminally prosecute Defendant in the Southern District of Texas for offenses arising from conduct charged in the Criminal Information. This plea agreement binds only the United States Attorney's Office for the Southern District of Texas and Defendant.   It does not bind any other United States Attorney's Office.   The United States Attorney's Office for the Southern District of Texas will bring this plea agreement and the full extent of Defendant's cooperation to the attention of other prosecuting offices, if requested.

## United States' Non-Waiver of Appeal

12. The United States reserves the right to carry out its responsibilities under guidelines sentencing. Specifically, the United States reserves the right:

(a) to bring its version of the facts of this case, including its evidence file and any investigative files, to the attention of the Probation Office in connection with that office's preparation of a presentence report;

(b) to set forth or dispute sentencing factors or facts material to sentencing;

(c) to seek resolution of such factors or facts in conference with Defendant's counsel and the Probation Office;

(d) to file a pleading relating to these issues, in accordance with section 6A1.2 of the United States Sentencing Guidelines and Title 18, United States Code, section 3553(a); and

(e) to appeal the sentence imposed or the manner in which it was determined.

## Sentence Determination

13. Defendant is aware that the sentence will be imposed after consideration of the United States Sentencing Guidelines and Policy Statements, which are only advisory, as well as the provisions of Title 18, United States Code, Section 3553(a). Defendant nonetheless acknowledges and agrees that the Court has authority to impose any sentence up to and including the statutory maximum set for the offense(s) to which Defendant pleads guilty, and that the sentence to be imposed is within the sole discretion of the sentencing judge after the Court has consulted the

applicable Sentencing Guidelines.   Defendant understands and agrees that the parties' positions regarding the application of the Sentencing Guidelines do not bind the Court and that the sentence imposed is within the discretion of the sentencing judge.   If the Court should impose any sentence up to the maximum established by statute, or should the Court order any or all of the sentences imposed to run consecutively, Defendant cannot, for that reason alone, withdraw a guilty plea, and will remain bound to fulfill all of the obligations under this plea agreement.

### Rights at Trial

14.   Defendant understands that by entering into this agreement, he surrenders certain rights as provided in this plea agreement.   Defendant understands that the rights of a defendant include the following:

(a)   If Defendant persisted in a plea of not guilty to the charges, defendant would have the right to a speedy jury trial with the assistance of counsel.   The trial may be conducted by a judge sitting without a jury if Defendant, the United States, and the court all agree.

(b)   At a trial, the United States would be required to present witnesses and other evidence against Defendant.   Defendant would have the opportunity to confront those witnesses and his/her attorney would be allowed to cross-examine them.   In turn, Defendant could, but would not be required to, present witnesses and other evidence on his/her own behalf.   If the witnesses for Defendant would not appear voluntarily, he could require their attendance through the subpoena power of the court; and

(c)   At a trial, Defendant could rely on a privilege against self-incrimination and decline to testify, and no inference of guilt could be

9

drawn from such refusal to testify.   However, if Defendant desired to do so, he could testify on his own behalf.

## Factual Basis for Guilty Plea

15.   Defendant is pleading guilty because he is in fact guilty of the charges contained in Count One of the Criminal Information.   If this case were to proceed to trial, the United States could prove each element of the offense beyond a reasonable doubt.   The following facts, among others, would be offered to establish Defendant's guilt:

From on or about November 21, 2012 and continuing to the present, in the Southern District of Texas, and within the jurisdiction of this Court, **DERRICK ANDRE CHIZER**, defendant herein, did knowingly and willfully combine, conspire, confederate, and agree with others known and unknown to the United States Attorney to violate Title 18, United States Code, Section 1343 (Wire Fraud), that is to devise and intend to devise a scheme and artifice to defraud, and for obtaining money by means of false and fraudulent pretenses, and in the execution of said scheme and artifice, did knowingly cause to be transmitted by means of wire communications in interstate commerce, writings, signs, signals, pictures, and sounds, as more fully set forth below, all in violation of Title 18, United State Code, Sections 371 and 1343.

On or about November 21, 2012, a co-conspirator, hereinafter referred to as "CC," and defendant **CHIZER** registered MEP Sales & Service, hereinafter referred to as "MEP," as an assumed named entity with the Harris County Clerk's Office.

On or about April 29, 2013, CC and defendant **CHIZER** submitted a VA Form 0877 fraudulently certifying to the CVE that defendant **CHIZER** was a service-disabled veteran who possessed a 51% unconditional ownership interest in MEP when CC and defendant **CHIZER** knew defendant **CHIZER** did not possess a 51% unconditional interest in MEP.

On or about May 08, 2013, CC and defendant **CHIZER** caused CVE to wrongfully certify MEP as a qualified SDVOSB.

On or about March 13, 2014, CC and defendant **CHIZER** caused the VA to wrongfully award SDVOSB set-aside contract VA256-14-C-0089 to MEP.

On or about May 14, 2014, CC and defendant **CHIZER** caused the VA to wrongfully award SDVOSB set-aside contracts VA256-14-C-0139 and VA256-C-1140 to MEP.

On or about May 23, 2014, CC and defendant **CHIZER** caused the VA to log into IPPS and place an interstate wire communication from Austin, Texas to the U.S. Department of Treasury's Office in Kansas City, Missouri, hereinafter referred to as

11

"DOTKCM," requesting $47,731.00 in SDVOSB program monies be paid to MEP for MEP fraudulent invoices AM1163 and AM1168 related to SDVOSB set-aside contract VA256-14-C-0089.

On or about July 11, 2014, CC and defendant **CHIZER** caused the VA to log into IPPS and place an interstate wire communication from Austin, Texas to the DOTKCM requesting $25,293.42 in SDVOSB program monies be paid to MEP for MEP fraudulent invoice AM1183 related to SDVOSB set-aside contract VA256-14-C-0140.

On or about July 24, 2014, CC and defendant **CHIZER** caused the VA to log into IPPS and place an interstate wire communication from Austin, Texas to the DOTKCM requesting $18,325.00 in SDVOSB program monies be paid to MEP for MEP fraudulent invoice AM1182 related to SDVOSB set-aside contract VA256-14-C-0139.

On or about July 29, 2014, CC and defendant **CHIZER** caused the VA to log into IPPS and place an interstate wire communication from Austin, Texas to the DOTKCM requesting $6,000.00 in SDVOSB program monies be paid to MEP for MEP fraudulent invoice AM1184 related to SDVOSB set-aside contract VA256-14-C-0089.

On or about August 25, 2014, CC and defendant **CHIZER** caused the VA to log into IPPS and place an interstate wire communication from Austin, Texas to the DOTKCM requesting $19,336.00 in SDVOSB program monies be paid to MEP for MEP fraudulent invoice AM1193 related to SDVOSB set-aside contract VA256-14-C-0140.

On or about September 23, 2014, CC and defendant **CHIZER** caused the VA to wrongfully award small business set-aside contract   VA256-14-P-4094 to MEP.

On or about November 5, 2014, CC and defendant **CHIZER** caused the VA to log into IPPS and place an interstate wire communication from Austin, Texas to the DOTKCM requesting $5,000.00 in SDVOSB program monies be paid to MEP for MEP fraudulent invoice AM1204 related to SDVOSB set-aside contract VA256-14-C-0140.

On or about November 6, 2014, CC and defendant **CHIZER** caused the VA to log into IPPS and place an interstate wire communication from Austin, Texas to the DOTKCM requesting $132,800.00 be paid to MEP for MEP fraudulent invoice T1210 related to small business set-aside contract VA256-14-P-4094.

On or about December 17, 2014, CC and defendant **CHIZER** registered MEP with the Texas Secretary of State as a limited liability company.

On or about December 22, 2014, CC and defendant **CHIZER** caused the VA to log into IPPS and place an interstate wire communication from Austin, Texas to the DOTKCM requesting $175,000.00 be paid to MEP for MEP fraudulent invoice T1212 related to small business set-aside contract VA256-14-P-4094.

On or about April 27, 2015, CC and defendant **CHIZER** caused the VA to log into IPPS and place an interstate wire communication from Austin, Texas to the DOTKCM requesting $48,465.75 be paid to MEP for MEP fraudulent invoice T1225 related to small business set-aside contract VA256-14-P-4094.

On or about July 6, 2015, CC and defendant **CHIZER** caused the VA to log into IPPS and place an interstate wire communication from Austin, Texas to the DOTKCM requesting $25,000.00 be paid to MEP for MEP fraudulent invoice T1239 related to small business set-aside contract VA256-14-P-4094.

On or about September 4, 2015, CC and defendant **CHIZER** caused the VA to wrongfully award small business set-aside contract VA256-15-C-0152 to MEP.

On or about October 1, 2015, CC and defendant **CHIZER** submitted a VA Form 0877 fraudulently re-certifying to the CVE that defendant **CHIZER** was a service-disabled veteran who possessed a 51% unconditional ownership interest in MEP when CC and defendant **CHIZER** knew that defendant **CHIZER** did not possess a 51% unconditional interest in MEP.

14

On or about October 21, 2015, CC and defendant **CHIZER** caused the VA to log into IPPS and place an interstate wire communication from Austin, Texas to the DOTKCM requesting $11,900.00 be paid to MEP for MEP fraudulent invoice DR1299 related to small business set-aside contract VA256-15-C-0152.

On or about October 22, 2015, CC and defendant **CHIZER** caused the VA to log into IPPS and place an interstate wire communication from Austin, Texas to the DOTKCM requesting $11,504.90 be paid to MEP for MEP fraudulent invoice T1300 related to small business set-aside contract VA256-14-P-4094.

On or about December 29, 2015, CC and defendant **CHIZER** caused the VA to wrongfully award SDVOSB set-aside contract VA256-16-C-0035 to MEP.

On or about March 28, 2016, CC and defendant **CHIZER** caused the VA to log into IPPS and place an interstate wire communication from Austin, Texas to the DOTKCM requesting $48,500.00 in SDVOSB program monies be paid to MEP for MEP fraudulent invoice AM1339 related to SDVOSB set-aside contract VA256-16-C-0035.

On or about May 13, 2016, CC and defendant **CHIZER** caused the VA to wrongfully award small business set-aside contract VA256-16-P-0840 to MEP.

On or about July 7, 2016, CC and defendant **CHIZER** caused the VA to log into IPPS and place an interstate wire communication from Austin, Texas to the

DOTKCM requesting $28,250.00 be paid to MEP for MEP fraudulent invoice A1365 related to small business set-aside contract VA256-16-P-0840.

On or about July 25, 2016, CC and defendant **CHIZER** caused the VA to wrongfully award SDVOSB set-aside contract VA256-16-C-0136 to MEP.

On or about August 2, 2016, CC and defendant **CHIZER** caused the VA to log into IPPS and place an interstate wire communication from Austin, Texas to the DOTKCM requesting $29,295.10 be paid to MEP for MEP fraudulent invoice T1340 related to small business set-aside contract VA256-14-P-4094.

On or about August 16, 2016, CC and defendant **CHIZER** caused the VA to wrongfully award small business set-aside contract VA256-16-C-0165 to MEP.

On or about September 2, 2016, CC and defendant **CHIZER** caused the VA to wrongfully award small business set-aside contract VA256-16-C-0169 to MEP.

On or about September 12, 2016, CC and defendant **CHIZER** caused the VA to wrongfully award SDVOSB set-aside contract VA256-16-C-0191 to MEP.

On or about September 21, 2016, CC and defendant **CHIZER** caused the VA to wrongfully award SDVOSB set-aside contract VA256-16-C-0193 to MEP.

On or about September 28, 2016, CC and defendant **CHIZER** caused the VA to log into IPPS and place an interstate wire communication from Austin, Texas to the DOTKCM requesting $49,178.00 in SDVOSB program monies be paid to MEP

for MEP fraudulent invoice RR1378 related to SDVOSB set-aside contract VA256-16-C-0136.

On or about October 3, 2016, CC and defendant **CHIZER** caused the VA to log into IPPS and place an interstate wire communication from Austin, Texas to the DOTKCM requesting $20,000.00 in SDVOSB program monies be paid to MEP for MEP fraudulent invoice J1380 related to SDVOSB set-aside contract VA256-16-C-0191.

On or about October 24, 2016, CC and defendant **CHIZER** caused the VA to log into IPPS and place an interstate wire communication from Austin, Texas to the DOTKCM requesting $11,000.00 in SDVOSB program monies be paid to MEP for MEP fraudulent invoice J1383 related to SDVOSB set-aside contract VA256-16-C-0191.

On or about November 29, 2016, CC and defendant **CHIZER** caused the VA to log into IPPS and place an interstate wire communication from Austin, Texas to the DOTKCM requesting $45,000.00 be paid to MEP for MEP fraudulent invoice J1384 related to small business set-aside contract VA256-16-C-0165.

On or about December 7, 2016, CC and defendant **CHIZER** caused the VA to log into IPPS and place an interstate wire communication from Austin, Texas to the DOTKCM requesting $80,000.00 be paid to MEP for MEP fraudulent invoice

A1389 in the amount of $25,000.00 related to small business set-aside contract VA256-16-C-0169 and for MEP fraudulent invoice A1388 in the amount of $55,000.00 related to SDVOSB set-aside contract VA256-16-C-0193.

On or about January 6, 2017, CC and defendant **CHIZER** caused the VA to log into IPPS and place an interstate wire communication from Austin, Texas to the DOTKCM requesting $19,400.00 be paid to MEP for MEP fraudulent invoice A1394 related to small business set-aside contract VA256-16-C-0169.

On or about January 19, 2017, CC and defendant **CHIZER** caused the VA to log into IPPS and place an interstate wire communication from Austin, Texas to the DOTKCM requesting $114,718.00 in SDVOSB program monies be paid to MEP for MEP fraudulent invoice A1396 related to SDVOSB set-aside contract VA256-16-C-0193.

On or about January 25, 2017, CC and defendant **CHIZER** caused the VA to log into IPPS and place an interstate wire communication from Austin, Texas to the DOTKCM requesting $250,000.00 be paid to MEP for MEP fraudulent invoice J1397 related to small business set-aside contract VA256-16-C-0165.

On or about February 7, 2017, CC and defendant **CHIZER** caused the VA to log into IPPS and place an interstate wire communication from Austin, Texas to the DOTKCM requesting $20,554.00 in SDVOSB program monies be paid to MEP for

MEP fraudulent invoice A1400 in the amount of $5,957.00 and fraudulent invoice A1401 in the amount of $14,597.00 related to SDVOSB contract VA256-16-C-0193.

On or about April 6, 2017, CC and defendant **CHIZER** caused the VA to log into IPPS and place an interstate wire communication from Austin, Texas to the DOTKCM requesting $175,000.00 be paid to MEP for MEP fraudulent invoice J1403 related to small business set-aside contract VA256-16-C-0165.

On or about April 21, 2017, CC and defendant **CHIZER** caused the VA to log into IPPS and place an interstate wire communication from Austin, Texas to the DOTKCM requesting $7,720.00 be paid to MEP for MEP fraudulent invoice A1399 in the amount of $3,875.00 related to small business set-aside contract VA256-16-C-0165 and for MEP fraudulent invoice W1404 in the amount of $3,845.00 related to SDVOSB set-aside contract VA256-16-C-0193.

On or about May 31, 2017, CC and defendant **CHIZER** caused the VA to log into IPPS and place an interstate wire communication from Austin, Texas to the DOTKCM requesting $49,178.00 in SDVOSB program monies be paid to MEP for MEP fraudulent invoice WR1405 related to SDVOSB set-aside contract VA256-16-C-0136.

On or about June 26, 2017, CC and defendant **CHIZER** caused the VA to log into IPPS and place an interstate wire communication from Austin, Texas to the DOTKCM requesting $5,650.00 in SDVOSB program monies be paid to MEP for MEP fraudulent invoice W1407 related to SDVOSB contract VA256-16-C-0193.

On or about June 26, 2017, CC and defendant **CHIZER** caused the VA to log into IPPS and place an interstate wire communication from Austin, Texas to the DOTKCM requesting $13,987.00 in SDVOSB program monies be paid to MEP for MEP fraudulent invoice W1410 related to SDVOSB contract VA256-16-C-0193.

As a result of CC and defendant **CHIZER's** fraudulent acquisition of MEP's SDVOSB certification, the VA wrongfully awarded MEP twelve (12) set-aside contracts (7-SDVOSB set-aside contracts and 5-small business set-aside contracts) totaling $1,642,009.42. To date, MEP has fraudulently submitted requests for payment resulting in VA payments to MEP totaling approximately $1,493,786.17.

Investigation established defendant **CHIZER** unlawfully received $38,143.40 of these wrongfully awarded set-aside contract monies as profit distribution from MEP/CC.

### Breach of Plea Agreement

16. If Defendant should fail in any way to fulfill completely all of the obligations under this plea agreement, the United States will be released from its obligations under the plea agreement, and Defendant's plea and sentence will stand. If at any time Defendant retains, conceals, or disposes of assets in violation of this plea agreement, or if Defendant knowingly withholds evidence or is otherwise not completely truthful with the United States, then the United States may move the Court to set aside the guilty plea and reinstate prosecution. Any information and documents that have been disclosed by Defendant, whether prior to or subsequent to this plea agreement, and all leads derived therefrom, will be used against defendant in any prosecution.

### Restitution, Forfeiture, and Fines – Generally

17. This Plea Agreement is being entered into by the United States on the basis of Defendant's express representation that he will make a full and complete disclosure of all assets over which he exercises direct or indirect control, or in which he has any financial interest. Defendant agrees not to dispose of any assets or take any action that would effect a transfer of property in which he has an interest, unless Defendant obtains the prior written permission of the United States.

18.   Defendant agrees to make complete financial disclosure by truthfully executing a sworn financial statement (Form OBD-500 or similar form) within 14 days of signing this plea agreement.   Defendant agrees to authorize the release of all financial information requested by the United States, including, but not limited to, executing authorization forms permitting the United States to obtain tax information, bank account records, credit histories, and social security information. Defendant agrees to discuss and answer any questions by the United States relating to Defendant's complete financial disclosure.

19.   Defendant agrees to take all steps necessary to pass clear title to forfeitable assets to the United States and to assist fully in the collection of restitution and fines, including, but not limited to, surrendering title, executing a warranty deed, signing a consent decree, stipulating to facts regarding the transfer of title and the basis for the forfeiture, and signing any other documents necessary to effectuate such transfer.   Defendant also agrees to direct any banks which have custody of his assets to deliver all funds and records of such assets to the United States.

20.   Defendant understands that forfeiture, restitution, and fines are separate components of sentencing and are separate obligations.

22

**Forfeiture**

21. Defendant stipulates and agrees that the property listed in the Criminal Information's Notice of Forfeiture (and in any supplemental Notices) is subject to forfeiture, and Defendant agrees to the forfeiture of that property. In particular, but without limitation, Defendant stipulates that the following specific property is subject to forfeiture:

22. Defendant stipulates and agrees that Defendant obtained at least $38,143.40 from the criminal offenses and that the factual basis for his guilty plea supports the forfeiture of $38,143.40. Defendant stipulates and admits that one or more of the conditions set forth in Title 21, United States Code, section 853(p), exists. Defendant agrees to forfeit any of Defendant's property in substitution, up to a total forfeiture of $38,143.40. Defendant agrees to the imposition of a personal money judgment in that amount.

23. Defendant agrees to waive any and all interest in any asset which is the subject of a related administrative or judicial forfeiture proceeding, whether criminal or civil, federal or state.

24. Defendant consents to the order of forfeiture becoming final as to Defendant immediately following this guilty plea, pursuant to Federal Rule of Criminal Procedure 32.2(b)(4)(A).

25.   Subject to the provisions of paragraph 7 above, Defendant waives the right to challenge the forfeiture of property in any manner, including by direct appeal or in a collateral proceeding.

### Fines

26.   Defendant understands that under the Sentencing Guidelines the Court is permitted to order Defendant to pay a fine that is sufficient to reimburse the government for the costs of any imprisonment or term of supervised release, if any. Defendant agrees that any fine imposed by the Court will be due and payable immediately, and Defendant will not attempt to avoid or delay payment.   Subject to the provisions of paragraph 7 above, Defendant waives the right to challenge the fine in any manner, including by direct appeal or in a collateral proceeding.

### Complete Agreement

27.   This written plea agreement, consisting of <u>27</u> pages, including the attached addendum of Defendant and his attorney, constitutes the complete plea agreement between the United States, Defendant, and Defendant's counsel.   No promises or representations have been made by the United States except as set forth in writing in this plea agreement.   Defendant acknowledges that no threats have been made against him and that he is pleading guilty freely and voluntarily because he is guilty.

24

28.   Any modification of this plea agreement must be in writing and signed by all parties.

Filed at _Houston_, Texas, on _February 15_, 2018.

_____
Derrick Andre Chizer
Defendant

Subscribed and sworn to before me on _February 15_, 2018.

DAVID J. BRADLEY, Clerk
UNITED STATES DISTRICT CLERK

By: _____
Deputy United States District Clerk

APPROVED:

Ryan K. Patrick
United States Attorney

By: _____
Daniel C. Rodriguez
Assistant United States Attorney
Southern District of Texas
Telephone: 713.567.9638

_____
Philip G. Gallagher
Attorney for Defendant

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF TEXAS
### HOUSTON DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | § | |
| | § | |
| v. | § | CRIMINAL NO. 4:18-CR-00072 |
| | § | |
| DERRICK ANDRE CHIZER, | § | |
| Defendant. | | |

## PLEA AGREEMENT -- ADDENDUM

I have fully explained to Defendant his rights with respect to the pending

Criminal Information. I have reviewed the provisions of the United States

Sentencing Commission's Guidelines Manual and Policy Statements and I have fully

and carefully explained to Defendant the provisions of those Guidelines, which may

apply in this case.    I have also explained to Defendant that the Sentencing

Guidelines are only advisory and the court may sentence Defendant up to the

maximum allowed by statute per count of conviction.    Further, I have carefully

reviewed every part of this plea agreement with Defendant.    To my knowledge,

Defendant's decision to enter into this agreement is an informed and voluntary one.


_____          2/15/18_____
Philip G. Gallagher                      Date
Attorney for Defendant

I have consulted with my attorney and fully understand all my rights with respect to the Criminal Information pending against me.   My attorney has fully explained, and I understand, all my rights with respect to the provisions of the United States Sentencing Commission's Guidelines Manual, which may apply in my case. I have read and carefully reviewed every part of this plea agreement with my attorney.   I understand this agreement and I voluntarily agree to its terms.

_____
Derrick Andre Chizer
Defendant

2 · 15 · 2018
_____
Date

27